Day, J.
 

 This case presents the question of the
 
 *266
 
 right of a clerk of courts to refuse to accept for filing a bill of sale for a motor vehicle where such instrument is not accompanied by the prepaid tax receipts required by statute.
 

 This right is claimed by the clerk of courts under the provisions of Section 6310-10, General Code, 116 Ohio Laws, 59 (now Section 6290-5), the pertinent portion of which read as follows:
 

 “Each corporation * *
 
 *
 
 or person from whom title has in any manner been passed to a motor vehicle shall present to the clerk of courts of the county in which the sale, transfer, conveyance, gift or passage of title is consummated within three days immediately thereafter, both copies of the duplicate bill of sale. It shall be the duty of the clerk of courts to refuse to accept for filing the duplicate bill of sale if such instrument is not executed and witnessed according to the provisions of this act or if the duplicate bill of sale is not accompanied by the vendor’s portion of the prepaid tax receipts required by Section 5546-3 of the General Code and the purchaser’s portion of such prepaid tax receipts are not affixed to the owner’s copy of the bill of sale. It shall be the further duty of the clerk to ascertain that such prepaid tax receipts are so affixed and presented and to void such stamps in a manner prescribed by the tax commission. Provided, however, that in the following cases such stamps need not be affixed: * * *
 

 “2. When the vendor is not regularly engaged in the business of selling motor vehicles.
 
 * * *”
 

 Section 5546-3, General Code, provides:
 

 “Excepting as provided in Section 5546-5 of the General Code, the tax imposed by Section 5546-2 of the General Code shall be paid by the consumer to the vendor in every instance, and it shall be the duty of each vendor to collect from the consumer the full and exact amount of the tax payable in respect of each taxable sale, and to evidence the payment of the tax
 
 *267
 
 in each case by cancelling prepaid tax receipts, equal in face value to the amount thereof, in the manner and at the times provided in this section, to wit:
 

 “(a) If the price is, at or prior to the delivery of possession of the thing sold to the consumer, paid in currency passed from hand to hand by the consumer or his agent to the vendor or his agent, the vendor or his agent shall:
 

 “1. Collect the tax with and at the same time as the price.
 

 “2.
 
 Immediately cancel in the presence of the buyer by immediately tearing into two parts a prepaid tax receipt or receipts of the proper face value, deliver one part of each such cancelled prepaid tax receipt to the consumer or his agent, and retain the other part thereof.
 

 “ (b) If the price is otherwise paid or to be paid, the vendor or his agent shall, at or prior to the delivery of possession of the thing sold to the consumer, cancel or cause to be cancelled by tearing into two parts prepaid tax receipts equal in face value to the amount of the tax imposed by this act. Thereupon and thereby the amount of the tax with respect to such sale, payment of which to the state is evidenced by such cancellation, shall become a legal charge in favor of the vendor and against the consumer, which shall in every case be collected by the vendor, as herein provided, in addition to the price; and at or immediately after such collection, the vendor shall deliver one part of each such cancelled prepaid tax receipt to the consumer and retain the other part thereof.
 

 “In case the tax does not apply to a sale, the consumer must furnish to the vendor and the vendor must obtain from the consumer a certificate in proper form, indicating that the sale is not legally subject to the tax herein imposed. The certificate herein required shall be in such form as the commission shall by regulation prescribe, and in case no certificate is furnished
 
 *268
 
 or obtained prior to the time the sale is consummated, the tax shall apply.
 

 “However, no certificate need be obtained or furnished where the item of tangible personal property sold is never subject to the tax imposed regardless of use.”
 

 Section 5546-2, General Code, imposes “an excise tax * * * on each retail sale made in this state of tangible personal property on and after the first day of January, 1935, with the exceptions hereinafter mentioned and described, as follows: * * *
 

 “The taxes hereby imposed shall apply and be collected when the sale is made, regardless of the time when the price is paid or delivered. * * *
 

 “The tax hereby levied does not apply to the following sales: * * *
 

 “7. Casual and isolated sales by a vendor who is not engaged in the business of selling tangible personal property. * * *
 

 “For the purpose of the proper administration of this act and to prevent the evasion of the tax hereby levied, it shall be presumed that all sales made in this state are subject to the tax hereby levied until the contrary is established. ’ ’
 

 Relator contends that the clerk of courts had no right to refuse to accept the bill of sale for filing, and bases its contention on the grounds that, first, relator is not a vendor “regularly engaged in the business of selling motor vehicles”; second, the sale is “casual and isolated”; and third, relator is not a vendor “engaged in the business of selling tangible personal property.”
 

 Let us first consider the contention that relator is not “regularly engaged in the business of selling motor vehicles.”
 

 Section 5546-2, General Code, provides that until the contrary is established “it shall be presumed that all sales made in this state are subject to the tax hereby
 
 *269
 
 levied.” In view of this presumption, it was incumbent upon the relator to establish that it is not a vendor regularly engaged in the business of selling motor vehicles, in order to come within the exception of Section 6310-10(2), General Code. However, relator failed to establish this fact. The agreed statement of facts does not disclose any facts on the question whether the sale here involved is the only sale or merely one of a succession of sales of motor vehicles made by the relator. Not having a factual basis upon which to determine whether relator is a vendor regularly engaged in the business of selling motor vehicles, we are obliged to resort to the statutory presumption and hold that the sale is, under this issue, subject to the tax.
 

 .
 

 The contentions that the sale is “casual and isolated” and that the relator is not a vendor “engaged in the business of selling tangible personal property” will be considered together, since they are interrelated.
 

 In support of these contentions, relator argues that it is regularly engaged in the loan business; that seizure and sale of chattel property for default in mortgages is occasional and merely incidental to the loan business and therefore casual and isolated; and that relator is not engaged in the business of selling tangible personal property for the reason that these sales are not conducted for profit.
 

 The agreed statement of facts discloses that relator lends money to people on chattel mortgage security; that a provision is contained in the chattel mortgage, by the terms of which relator is vested with the right, upon mortgagor’s default, or upon mortgagee’s feeling of insecurity, to seize and sell the mortgaged chattels at public or private sale and to credit mortgagor’s account with the proceeds realized therefrom; that under and by virtue of this mortgage provision, relator engages in the practice of seizing
 
 *270
 
 and selling mortgaged chattels and realizes therefrom, annually, an average exceeding $25,000; that in the year 1936, taken as a representative year, the total proceeds realized by relator from such sales in the state of Ohio amounted to $27,656.82. Can relator, under this state of facts, be held not to be engaged in the business of selling tangible personal property, and can the sales thus made by relator be said to be “casual and isolated”?
 

 Section 5546-1, General Code, defines “business” as including “any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect.” The term “engaging in business” is defined in the same section as “commencing, conducting or continuing in business
 
 * * *.
 
 However, making a casual or isolated sale is not ‘ engaging in business. ’ ’ ’ The term “casual or isolated sale” is not defined by statute.
 

 Correlating these two definitions, we find that a vendor, engaged in the business of selling tangible personal property, is one who commences, conducts or continues in the activity of selling tangible personal property, with the object of gain, benefit, or advantage, either direct or indirect.
 

 Is relator such a vendor? In urging the negative to this question, relator argues that its sales are not conducted for profit and therefore not with the “object of gain, benefit, or advantage.” It is significant, however, that the statute defining the term “business” does not use or include the word “profit.” “Profit” may be said to be “gain, benefit, or advantage” but “gain, benefit, or advantage” does not necessarily mean only “profit.” One may engage in a business activity with an object of “gain, benefit, or advantage” and not necessarily for “profit.”
 

 Is relator engaged in the business of selling? The terms “sale” and “selling” are defined in Section 5546-1, General Code, as including “all transactions
 
 *271
 
 whereby title or possession, or both, of tangible personal property, is or is to be transferred, * * * for a consideration * * *.” The agreed statement of facts recites that: “At the time of the execution of said note and in order to secure the payment thereof the said Carl F. Wiley and his wife, Martha Wiley, executed and delivered to The City Loan & Savings Company their chattel mortgage conveying among other things one Ford Tudor automobile, *
 
 * *”;
 
 that “According to the terms and provisions of said mortgage said automobile was to remain in the possession of the mortgagor until the conditions of the mortgage were broken or until the mortgagee deemed itself insecure. In case of default or in case said mortgagee deemed itself insecure then by the terms of said mortgage said mortgagee was authorized to take possession of the property and sell the same at public or private sale and credit the proceeds realized from said sale to the account of the mortgagor.”
 

 In other words, in case of default by the mortgagor, or in event of a feeling of insecurity on the part of the mortgagee, the property may be seized and sold by the mortgagee, who thereupon would execute and deliver to the purchaser a bill of sale, transferring title.
 

 These sales nre not occasional but are so abundantly recurrent and continuous as to yield in excess of $25,000 annually. The activity of selling is not only commenced, but continually and systematically conducted, and as such, constitutes engaging in the business of selling within the meaning of the provisions of Section 5546-1
 
 et seq.,
 
 General Code.
 

 Sales made in a more or less continuous succession cannot be said to be casual or isolated. Occasional sales, made by one not engaged in the business of selling, may be casual and isolated, but if the characteristic of systematic recurrence and continuity in
 
 *272
 
 respect to such, sales is developed, they cease to be occasional, casual or isolated.
 

 Although relator is engaged in the business of lending money, we hold that it is likewise engaged in the business of selling tangible personal property, in the course of which the sale herein involved was made. The provisions of Section 5546-1
 
 et seq.,
 
 General Code, imposing the sales tax, therefore, apply to the sale in question, in view of which it was the clear, legal duty of the clerk of courts to refuse to accept for filing the bill of sale on the ground that it was not accompanied by the prepaid tax receipts required by statute.
 

 Writ denied.
 

 Weygandt, C. J., Zimmerman, Myers and Gorman, JJ., concur.
 

 Matthias and Williams, JJ., dissent.